#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:06CR43 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | |
| ANDREW E. JENNINGS, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion to suppress filed by defendant Andrew E. Jennings (Jennings) (Filing No. 12). Jennings is charged in the Indictment with the possession with intent to distribute 50 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1). Jennings seeks to suppress evidence obtained from Jennings during a traffic stop by the Omaha Police Department (OPD) on January 15, 2006. An evidentiary hearing was held on Jennings's motion on May 2, 2006. During the hearing, the court heard the testimony of OPD Officers Joseph Wherry (Officer Wherry), Craig E. Wylie (Officer Wylie), and Jason J. Slosson (Officer Slosson). The court also received into evidence a DVD recording of an OPD cruiser camera (Exhibit 1). A transcript of the hearing (TR.) was filed on May 8, 2006 (Filing No. 19).

#### FINDINGS OF FACT

On the evening of January 10, 2006, OPD Officer Wherry was on patrol duty in north Omaha, Nebraska (TR. 5). At approximately 2013 hours that evening, Officer Wherry heard a dispatch over his radio that there was an attempted home invasion/robbery at 3921 North 33rd Street (TR. 6). OPD Officers Sexton and Schroeder responded to the call (TR. 6). Thereafter it was broadcast over the police radio that the vehicle involved was a white Chevy Suburban or Ford Expedition with dark-tinted windows (TR. 7). It was also reported that at least one of the suspects was armed with a handgun (TR. 7). Almost simultaneously with the broadcast, Officer Wherry noticed a white Chevy Suburban with dark tinted windows next to him at 30th and Fort Streets headed northbound on 30th Street away from the area of the reported home invasion/robbery (TR. 7). Officer Wherry radioed

the description of the Chevy Suburban to Officer Shroeder who responded that the vehicle matched the description of the suspect vehicle and Officer Wherry should stop the vehicle (TR. 8).

Officer Wherry followed the Chevy Suburban until backup OPD units could arrive, whereupon Officer Wherry initiated a traffic stop of the Chevy Suburban (TR. 8). The stop occurred at 2024 hours in the vicinity of 30th and Redick Streets, approximately 24 to 25 blocks from the reported home invasion/robbery (TR. 8). At the time of the stop, Officer Wherry could not determine the number or race of the occupants because of the tinted windows (TR. 9). Officer Wherry described the stop as a felony stop, i.e., a stop to investigate an armed home invasion/robbery rather than a traffic stop (TR. 9-10). As such, Officer Wherry used his cruiser PA system and directed the occupants of the Chevy Suburban to show their hands and get out of the vehicle one by one (TR. 11; Exhibit 1). Jennings was the driver of the Chevy Suburban, and when he stepped out of the vehicle he was asked to walk backwards to the OPD cruiser where he was placed in handcuffs by OPD officers at the scene (TR. 12; Exhibit 1). A female occupant, Princess Johnson (Ms. Johnson) was ordered out of the driver's side of the Chevy Suburban and asked to walk backwards to the OPD cruiser at the rear of the Chevy Suburban where she was also placed in handcuffs (TR. 12; Exhibit 1). Jennings informed the officers that his five-year-old son was in the Chevy Suburban (Exhibit 1). OPD officers, with firearms shouldered and pointed at the vehicle, approached the Chevy Suburban and opened the rear door (Exhibit 1). As Officer Slosson approached the Chevy Suburban, he smelled the odor of marijuana coming from the vehicle (TR. 79). Officer Slosson also detected the odor of marijuana coming from the persons of Jennings and Ms. Johnson who had emerged from the vehicle (TR. 79). Upon seeing the boy, the officers lowered and slung their weapons and assisted the boy out of the Chevy Suburban and led him by his hand back to Jennings (Exhibit 1). At this time the driver's door and the rear driver's side passenger door were open (Exhibit 1).

After the boy was brought back to the cruiser area, Officer Wylie approached the passenger side of the vehicle performing a visual check of the inside of the Chevy Suburban with his flashlight (TR. 38-39; Exhibit 1). As Officer Wylie approached the front

of the Chevy Suburban, he smelled the odor of marijuana coming from the vehicle (TR. 40). Officer Wylie did not see any other persons in the vehicle and walked back to the other officers and reported what he smelled (TR. 41). Officers Slosson and Wylie then commenced to search the Chevy Suburban for the source of the marijuana (TR. 81). Officer Slosson searched the driver's side of the Chevy Suburban while Officer Wylie searched the passenger side (TR. 81). While the officers were searching the Chevy Suburban, the alleged victims of the home invasion/robbery had been brought to the scene by another officer and informed the officers that, while the vehicle was similar, Jennings and Ms. Johnson were not the assailants (TR. 30; 70; 98-99). Due to some miscommunication among the officers at the scene, Jennings and Ms. Johnson were released by one officer at the scene and they re-approached the Chevy Suburban (TR. 42-43). Ms. Johnson asked Officer Wylie why they were searching the vehicle, and Officer Wylie told her because he smelled marijuana (TR. 43). Ms. Johnson stated she had "smoked some earlier in the day" (TR. 43-44). Ms. Johnson and Jennings were directed to step back to the police cruisers while the officers completed their search of the Chevy Suburban (TR. 43).

Officers Wylie and Slosson continued to search the interior of the Chevy Suburban (TR. 45). Officer Wylie opened a loose hatch to a standard utility compartment near the rear wheel well of the passenger side of the vehicle and found a Crown Royal bag containing "crack" cocaine (TR. 45-46). Underneath the bag was a black semi-automatic handgun (TR. 46). Following that discovery, Officer Wylie informed the other officers of the finding of the handgun and directed officers to place Jennings and Ms. Johnson in handcuffs (TR. 47). Jennings stated: "It ain't even loaded" (TR. 47). Jennings's statement was not in response to any question directed to Jennings (TR. 47-48).

## LEGAL ANALYSIS

"Stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of the [Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention quite brief." **Delaware v. Prouse**, 440 U.S. 648, 653, (1979). "An investigative stop of a vehicle does not violate the Fourth Amendment where

the police have a reasonable suspicion that the occupant of the vehicle is engaged in criminal activity." **United States v. Briley**, 319 F.3d 360, 364 (8th Cir. 2003). "There is no requirement that there be a traffic violation." **United States v. Mora-Higuera**, 269 F.3d 905, 909 (8th Cir. 2001).

The court considers the totality of the circumstances in reviewing whether police officers had reasonable suspicion to stop the vehicle. **See United States v. Arvizu**, 534 U.S. 266, 273 (2002); **United States v. Bell**, 183 F.3d 746, 749 (8th Cir. 1999). "To be reasonable, suspicion must be supported by 'specific and articulable facts.'" **Id.** (**citing Terry v. Ohio**, 392 U.S. 1, 21 (1968)). Furthermore, "[a]fter making a valid *Terry* stop, police officers must diligently work to confirm or dispel their suspicions in a short period of time." **United States v. Bell**, 183 F.3d 746, 749 (8th Cir. 1999).

In this case, Officer Wherry observed a vehicle matching the description of a vehicle used in a home invasion/robbery where firearms were brandished. The observation of the white Chevy Suburban was close in time and place to the reported home invasion/robbery scene. After waiting for back-up police vehicles to arrive, the Chevy Suburban was stopped. The occupants of the Chevy Suburban were directed out of the vehicle and momentarily detained to investigate the reported home invasion/robbery. The police officers quickly and diligently determined that the occupants of the Chevy Suburban were not the suspects and were released. However, contemporaneously with the occupants alighting from the Chevy Suburban, two of the on-scene officers detected the smell of marijuana coming from the Chevy Suburban.

Once the officers detected the smell of marijuana coming from the Chevy Suburban, the officers had probable cause to further detain the occupants and search the Chevy Suburban. **See, e.g., United States v. Winters**, 221 F.3d 1039, 1042 (8th Cir. 2000) (finding probable cause supported the search of a vehicle in which a state trooper smelled raw marijuana); **United States v. Peltier**, 217 F.3d 608, 610 (8th Cir. 2000) (concluding "the smell of marijuana gave the deputy probable cause to search [the defendant]'s truck for drugs"); **United States v. Caves**, 890 F.2d 87, 89-91 (8th Cir. 1989) (holding the totality of the circumstances, including the smell of marijuana on the defendant's person, allowed a warrantless search of the defendant's vehicle based on probable cause). When there is

probable cause to search a vehicle for evidence, the vehicle can be searched without a warrant. ***Carroll v. United States***, 267 U.S. 132 (1925). Accordingly, the search of the Chevy Suburban by OPD officers on January 15, 2006, did not violate Jennings's Fourth Amendment rights, and the evidence discovered is admissible against him.

Jennings challenges the admissibility of his "it ain't loaded" statement made at the scene of the traffic stop. "A ***Miranda*** warning must precede any custodial interrogation. A custodial interrogation involves questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." ***United States v. Chamberlain***, 163 F.3d 499, 502 (8th Cir. 1999) (**citing *Miranda v. Arizona***, 384 U.S. 436 (1966)). Since Jennings was not free to go and had armed police officers surrounding him, the court finds Jennings was in custody for the purposes of ***Miranda***. However, "[i]nterrogation in the ***Miranda*** context refers to express questioning and to words or conduct that officers should know is 'reasonably likely to elicit an incriminating response from the suspect.'" ***United States v. Briones***, 390 F.3d 610, 612 (8th Cir. 2004) (**quoting *Rhode Island v. Innis***, 446 U.S. 291, 301 (1980)). Consequently, "***Miranda*** does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." ***Butzin v. Wood***, 886 F.2d 1016, 1018 (8th Cir. 1989) (quotation omitted). In this case, there was no questioning of Jennings and his statement was made in response to statements Officer Wylie made to the other police officers that a gun was found. Accordingly, there is no basis to suppress the statement made by Jennings.

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

Jennings's motion to suppress (Filing No. 12) be denied.

### ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such

objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 19th day of June, 2006.

BY THE COURT:

 s/Thomas D. Thalken
United States Magistrate Judge